## ROOT a. WHEELER.

*Supreme Court, Sixth District; Special Term, May,* 1861.

FORECLOSURE BY ADVERTISEMENT.—ACTION TO RESTRAIN EXECUTION SALE.

A foreclosure of a mortgage, by advertisement, under the statute, bars the claims of all persons having liens subsequent to the mortgage, who were duly served with notice; but the claim of one who was not so served is not barred, even though he had actual knowledge of the sale; and he may proceed to enforce his lien, notwithstanding the sale.

Where, however, the value of the mortgaged premises is less than the amount of the mortgage debt with the other liens prior to the lien not barred, such lien is of no value, and a purchaser in good faith may maintain an action to enjoin the lienor from so enforcing it.

Trial by the court.

This action was tried before Justice BALCOM, at a special term of the court, in Delaware county, commencing on the 28th day of May, 1861, when the following facts were proved or conceded:

Jonas H. Bixby and wife gave Arad Stowell and another a mortgage on certain lands in the town of Tompkins, Delaware county, dated the 5th day of November, 1855, which was duly recorded in the office of the clerk of Delaware county the 15th day of November aforesaid. The mortgage and bond that accompanied it, were given to secure the payment to said Stowell and another of $530, and interest thereon. The plaintiff purchased the bond and mortgage, and became the owner thereof, on the 14th day of February, 1860. He foreclosed the mortgage by advertisement, and became the purchaser of the mortgaged premises, in good faith, for the sum of $1500, on the 15th of May, 1860. The sum of $640.37 was then due and unpaid on the mortgage and bond.

There was no lien on the premises prior to the mortgage by judgment, decree, or otherwise. But between the time the mortgage was recorded and the 17th day of December, 1857, judgments were duly recovered and duly docketed in the office of the clerk of Delaware county, in the aggregate amounting to about $4700, which were not paid and were in full force when the plaintiff purchased said premises, and they were liens thereon.

The plaintiff caused notice of the sale, by virtue of the mortgage, to be duly served in due time, according to law, on the mortgagors and the owners of said judgments, and on all others, except the defendant, who had any lien or claim on said premises prior to the sale.

The defendant had a judgment against the mortgagor, Jonas H. Bixby, and another, for about $38, which was duly docketed in the office of said clerk on the 17th day of December, 1857;

which judgment was a lien on the mortgaged premises when they were purchased by the plaintiff.

The plaintiff was ignorant of the existence of the defendant's judgment until after he purchased the premises and paid therefor, and paid over the surplus money as hereinafter mentioned; and prior to his purchase, the plaintiff caused a search for liens upon said premises to be made by the clerk of Delaware county, and such clerk sent him a certificate, which purported to show all the judgments against the mortgagor, Bixby, docketed in his office and in force, on the 6th day of April, 1860; in which certificate the defendant's judgment was not mentioned, by reason of an oversight of the clerk.

The defendant was not served with notice of the sale of the mortgaged premises, in consequence of the ignorance of the plaintiff that he had a judgment against Bixby. But the defendant was a subscriber for, and reader of, the newspaper in which said notice was published, during the entire time of its publication; and he passed the place where the sale was made, and knew the plaintiff was then selling the premises, by virtue of said mortgage, and·heard the plaintiff bid $1500 therefor; and he did not object to the sale, or inform the plaintiff that he had a judgment against Bixby, the mortgagor. He did not then think of his judgment, and supposed he should collect it out of property other than said mortgaged premises.

Henry Evans had the first lien by judgment on the premises, subsequent to the mortgage, and the defendant was his attorney, and within a day or two after the plaintiff purchased the premises, he, as attorney of Evans, demanded the surplus money of the plaintiff, arising from the sale, over and above satisfying the plaintiff's mortgage, and the plaintiff paid such surplus money to the defendant for Evans.

The premises were worth less than $4000 when the plaintiff purchased them; and the lien thereon by the defendant's judgment was then of no value whatever, by reason of the older liens on the premises; and the premises are not now worth the amount of the liens thereon prior to the defendant's judgment.

Within a few days after the defendant received the surplus money of the plaintiff, and before the first of June, 1860, he caused an execution against the property of the mortgagor, Bixby, in due form, to be issued on his judgment, and directed

and delivered to the sheriff of Delaware county, for collection; and he caused said premises to be advertised for sale on said execution.

The plaintiff, on the 5th day of June, 1860, caused a notice in writing to be personally served on the defendant, in the following words and figures, to wit:

"To Truman H. Wheeler, Esq.: I understand that you have a judgment against Jonas H. Bixby, a transcript of which was filed in the clerk's office of Delaware county on or about the 17th of December, 1857. Also, that you have recently issued an execution upon said judgment against the said Bixby, and that you are now advertising the premises now occupied by me for sale under, and by virtue of, said execution. It therefore becomes necessary for me to commence a suit in equity to foreclose your equity of redemption. You will please to take notice, that if you will discontinue your proceedings for the sale of the said premises, I will commence said suit in equity, and will ask for a decree of the court, that your equity of redemption be foreclosed without costs; but if you refuse or fail to discontinue said proceedings, I shall ask that your equity of redemption be foreclosed with costs of suit. Dated June 3d, 1860.
"Yours, &c., Charles Root."

The defendant did not discontinue said advertisement, but refused to do so; and the plaintiff soon commenced this action to restrain the defendant from selling said premises on his judgment or by virtue of said execution, or any execution issued or to be issued, on said judgment; and he obtained an injunction so restraining him during the pendency of the action.

The plaintiff demanded judgment in his complaint—1st. That the defendant, his agents, and all persons acting under him, be forever restrained from selling said premises by virtue of the defendant's judgment; 2d. That the defendant, and all persons claiming under him, be foreclosed of all interest, liens, and equity of redemption in said premises; and for other and further relief, with costs.

The defendant in his answer claimed, among other things— 1st, That he be subrogated to the rights of the plaintiff in the premises, on paying him the amount of his mortgage, and that

the plaintiff should convey the premises to him; or, 2d, That the plaintiff convey the premises to him on being paid the $1500 he gave therefor, with interest; or, 3d, That the plaintiff pay him the amount of his judgment against Bixby, the mortgagor, with the sheriff's fees on the execution issued thereon, and also the costs of the action.

*R. H. Root,* for the plaintiff.

*T. H. Wheeler,* defendant, in person.

BALCOM, J.—After examining the statutes, "Of the foreclosure of mortgages by advertisement" (2 *Rev. Stat.,* 545), the acts amending the same (*Laws of* 1844, p. 529; *Laws of* 1847, p. 667; 3 *Rev. Stat.,* 5 ed., 859), the decisions cited by counsel, and others, I have come to the following conclusions:—1. The foreclosure of the mortgage and the purchase of the premises by the plaintiff barred all claim or equity of redemption of the mortgagors, and of all persons who had liens upon the premises subsequent to the mortgage, that were duly served with notice of the sale as required by law. (*Laws of* 1844, p. 530, § 8.) 2. The defendant, who was not duly served with such notice, is not foreclosed or barred of his equity of redemption or claim upon the premises by his judgment against the mortgagor, Bixby. (See the cases of King *a.* Duntz, 11 *Barb.,* 191; Wetmore *a.* Roberts, 10 *How. Pr.,* 51; Vanslyke *a.* Sheldon, 9 *Barb.,* 278; St. John *a.* Bumpstead, 17 *Ib.,* 100; Winslow *a.* McCall, 32 *Ib.,* 241; Post *a.* Arnot, 2 *Den.,* 344.) 3. The purchase of the premises by the plaintiff, under the foreclosure, did not destroy or affect the lien of the defendant's judgment. 4. The defendant's judgment, before the sale, was subject to all prior liens on the premises, including the plaintiff's mortgage, and it still remains subject to the same. 5. The defendant cannot claim that the purchase of the premises by the plaintiff destroyed or removed the liens thereon older than his, without admitting the validity of the foreclosure of the mortgage as against himself. 6. The plaintiff, by purchasing the premises, acquired all the interest the mortgagors had therein, and also all the rights thereto that the owners of liens thereon subsequent to the mortgage, and older than the defendant's judgment, had, who were duly served with notice of the sale. 7. The plaintiff has title

to the premises, free and clear of all claims or liens thereon, except the lien the defendant has by his judgment. 8. The defendant had the legal right to issue execution on his judgment and sell the premises, subject to the plaintiff's mortgage and all other liens thereon older than his judgment. 9. The plaintiff, by reason of the foreclosure of his mortgage (which was regular as against all persons interested, except the defendant), and his purchase of the premises, can maintain this equitable action, and ascertain the value of the defendant's lien on the premises, and on paying him such value, restrain him from ever selling the premises. (Benedict a. Gilman, 4 *Paige*, 58; Vroom a. Ditmas, *Ib.*, 526; Post a. Arnot, 2 *Den.*, 344.) 10. As the premises, at the time the plaintiff purchased them, were not worth as much as the amount then due on the mortgage and the other liens that were older than the defendant's judgment, his lien by that judgment was of no value, and so remains. 11. The defendant's lien being of no value, by reason of the amount of the older ones and the plaintiff's mortgage, he has no equitable right to sell the premises in virtue of his judgment on the execution already issued, or any other he may issue thereon, and thus put a cloud upon the plaintiff's title; and he should be restrained from ever exercising his legal right to do so. 12. The injunction-order, heretofore granted in the action, should be made perpetual, and the defendant's lien on the premises declared of no value, foreclosed, and barred; and the plaintiff should be adjudged the owner in fee of the premises, free from any lien thereon by the defendant's judgment. 13. Neither party should recover costs of the other. (2 *Barb. Ch.*, 199; *Code*, § 306.)

I am aware there is no adjudged case to support some of the foregoing conclusions, and that some of them, at first blush, may seem to be in conflict with well-considered decisions. But I think they are not in conflict with any such decision, and are in harmony with settled principles of equity jurisprudence. They take nothing valuable from the defendant without assuming to compensate him fully therefor;—they only require him to desist, upon equitable principles, from exercising a legal right, when its exercise would work great injustice to the plaintiff; and were such right valuable, he would be fully paid therefor. This is equity; and equity will control strictly legal

rights for the promotion of equal and exact justice between parties. (Briggs a. Davis, 20 N. Y., 15.)

The case of Post a. Arnot (2 Den., 344), and others in Paige's Reports, arose prior to the passage of the statute requiring notice, on foreclosing a mortgage by advertisement, to be served on the mortgagor and all persons having liens subsequent to the mortgage, and when a foreclosure by advertisement did not bar the right of any junior incumbrancer to redeem, whose lien accrued intermediate the execution of the mortgage and the sale; and the facts in each case in Barbour and Howard's Reports, are different from those in this. Hence the necessity of determining this case more upon principle than authority.

I will only add, that I have been unable to see how I could dispose of this case, except in the manner above stated, and do justice to both parties.

---

## THE MAYOR, &c., OF NEW YORK a. THE PARKER VEIN STEAMSHIP COMPANY.

*New York Superior Court; General Term, June*, 1861.

COUNTER-CLAIM.—ACTION ARISING ON CONTRACT.

A claim for damages for the conversion of property, is a demand arising in tort, and cannot, by waiving the tort and basing the claim on an implied assumpsit to pay the proceeds, be made a claim arising on contract, within the meaning of section 150 of the Code, relating to counter-claims.

Where a counter-claim is alleged in the answer as a tort, there can be no recovery upon it as upon contract.

In an action on a bond for rent upon a lease, the defendants cannot set up as a counter-claim a demand against the plaintiff for removing from the demised premises fixtures placed there by the tenant, one of the defendants, but which the lease did not in terms give the right to place there or the privilege to remove. Such a demand does not arise out of the contract or transaction which is the foundation of the plaintiff's demand.

In order to sustain a counter-claim, the right of the plaintiff to claim, and the right of the defendant to counter-claim, must be reciprocal.

Appeal from a judgment.